UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **I F G PORT HOLDINGS L L C** | **CASE NO. 2:24-CV-01095** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **SOUTH LOUISIANA RAIL FACILITY L L C** | **MAGISTRATE JUDGE LEBLANC** |

**REPORT AND RECOMMENDATION**

Before the court is Plaintiff's Motion for Remand filed by IFG Port Holdings LLC ("IFG"). Doc. 6. The motion is opposed [doc. 11], and the parties have filed a reply [doc. 12] and sur-reply [doc. 15], making the motion ripe for resolution. The motion has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this court.

After careful consideration of this motion and the applicable law, for the reasons that follow, **IT IS RECOMMENDED** that the motion be **DENIED**.

I.
BACKGROUND

On the face of the state-court petition, IFG's claims arise solely under Louisiana law. This motion to remand requires the court to determine whether they are nonetheless subject to the original jurisdiction of this court either under 28 U.S.C. § 1333 (admiralty jurisdiction) or 28 U.S.C. § 1331 (federal question jurisdiction).

IFG filed a *Petition for Amounts Owed Under Contract and/or on Open Account* in the 14th Judicial District Court for Calcasieu Parish, Louisiana. Doc. 1, att. 2. In it, plaintiff IFG alleges that defendant, South Louisiana Rail Facility, LLC ("SLRF"), "maintained an open account with Plaintiff for the provision of elevator and terminal services at its elevator facility at the Port of

1

Lake Charles." Doc. 1, att. 2, p. 1. The petition alleges that SLRF incurred charges in the amount of $417,413.36, which were due and owing at the time of the petition and itemized on an invoice attached to the petition. *Id.* at pp. 2, 8. Although the petition does not describe what the "elevator and terminal services" were, the invoice indicates that the unpaid charges arose as follows:

| Description | Charges |
|---|---|
| 27,000.000 MT U.S. No. 2 Long Grain Rough Rice / $17.50 per | $ 472,500.00 |
| MT Additional Truck Pit (15 Days) / $800 per day | $ 12,000.00 |
| MT Trimming / Holds #1-2-3-4-5 / $4,250 per hold | $ 21,250.00 |
| Doc and Manifest Filing Facilitation Fees | $ 3,000.00 |
| Storage Fees: Period: December 9, 2023 to May 3, 2024 | $ 287,820.00 |
| Finance Charges: through 8/30/2024 | $ 7,289.96 |
| | |
| Total | $ 803,859.96 |
| Payments/Credits | $ 386,446.60 |
| Amount Due | $ 417,413.36 |

Doc. 1, att. 2, p. 8. The invoice bears these identifying reference numbers:

Ref#:          MV Nordic Malmoe
Invoice #:     2024-05-001
Invoice date:  05/10/2024

*Id.* In addition to the unpaid charges, the petition seeks removal of approximately 400 metric tons of rice remaining in storage at IFG's facility, indicating that IFG made demand for removal of the same under La. R.S. § 10:7-206, which permits such demand and permits sale of the stored items if not timely removed. Doc. 1, att. 2, p. 6. The petition further alleges that the terminal services provided by IFG to SLRF are subject to IFG's Elevator Tariff No. 3, which allows for the collection of attorneys' fees and costs in connection with this legal proceeding. *Id.*

SLRF's responsive pleading raises counterclaims against IFG. The basis of one of the counterclaims is that between April 30 and May 10, 2024, IFG loaded the M/V Nordic Malmoe

2

with the rough rice then held in storage on SLRF's behalf, but IFG without warning and contrary to SLRF's instructions "failed to load approximately 414.91 metric tons of rice it held in storage for SLRF onto the M/V Nordic Malmoe." Doc. 4, p. 9.

SLRF timely removed the action. Doc. 1. SLRF argues this court has original jurisdiction over this matter under either admiralty jurisdiction, 28 U.S.C. § 1333, because the underlying transaction was maritime in nature, or federal question jurisdiction, 28 U.S.C. §§ 1331, 1337, because the petition implicitly raises federal questions involving the United States Warehouse Act, 7 U.S.C. § 241 *et seq*. and the Shipping Act, 46 U.S.C. § 40101 *et seq*. SLRF also seeks enforcement of the forum selection clause in IFG's Elevator Tariff No. 3, which requires that any disputes shall be subject to the exclusive jurisdiction of the United States District Court for the Western District of Louisiana, if this court has subject matter jurisdiction. Doc. 1, p. 4 (citing Tariff No. 3, doc. 1, att. 3, p. 3). In moving to remand, IFG disputes SLRF's characterization of the contract as anything other than a simple suit on open account under state law, and IFG argues that the forum selection clause is inapplicable here because there is no basis for the federal court to exercise subject matter jurisdiction. Doc. 6.

## II.
### APPLICABLE LAW AND ANALYSIS

**A. Standards governing remand**

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Any civil action brought in a state court of which the district courts have original jurisdiction may be removed to the proper district court. 28 U.S.C. § 1441(a). However, a federal district court must remand the action to state court if it finds it lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). The removing party bears the burden

of showing federal jurisdiction exists. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). "Once a motion to remand has been filed, the burden is on the defendant to prove, by a preponderance of the evidence, that federal jurisdiction exists." *Henry J. Ellender Heirs, LLC v. Exxon Mobil Corp.*, 42 F. Supp. 3d 812, 817 (E.D. La. 2014) (holding that tort claim did not satisfy the "location" test applicable to maritime tort actions). "The court has wide, but not unfettered, discretion to determine what evidence to use in making its determination of jurisdiction." *Sam v. Laborde Marine, L.L.C.*, No. CV H-19-4041, 2020 WL 59633, at *1 (S.D. Tex. Jan. 6, 2020) (citing *Coury v. Prot*, 85 F.3d 244, 249 (5th Cir. 1996)). Any doubt about the propriety of removal and "[a]ny ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 212 (5th Cir. 2013); *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008).

**B. Admiralty jurisdiction**

SLRF argues this court has original admiralty jurisdiction under 28 U.S.C. § 1333 because the invoice arises from a "contract for services facilitating activity on navigable water, namely loading the M/V Nordic Malmoe to facilitate the international shipment of rice from Louisiana to Mexico." Doc. 1, p. 3. Because loading the M/V Nordic Malmoe "was a substantial part of completing the alleged contract," SLRF contends IFG's claims are subject to federal maritime jurisdiction under 28 U.S.C. § 1333. *Id.* IFG disputes the involvement of the M/V Nordic Malmoe in the underlying transaction.

Under 28 U.S.C. § 1333, "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of [ . . . a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1) (alteration added). Doc. 1, p. 3. Where the underlying litigation involves a contract dispute,

4

admiralty jurisdiction depends on the "'nature and subject matter' of the contract[,]" as opposed to the locality where the contract was confected or effected.  1 Thomas J. Schoenbaum, *Admiralty and Maritime Law*, § 3:10 Admiralty Contract Jurisdiction (6th ed. 2024) (quoting *Exxon Corp. v. Cent. Gulf Lines, Inc.*, 500 U.S. 603, 612 (1991)).  A maritime contract is one "relating to a ship in its use as such, or to commerce or navigation on navigable waters, or to transportation by sea or to maritime employment."  *J.A.R., Inc. v. M/V Lady Lucille*, 963 F.2d 96, 98 (5th Cir. 1992) (internal quotation marks omitted, citing *Thurmond v. Delta Well Surveyors,* 836 F.2d 952, 954 (5th Cir.1988)).  "Our cases do not draw clean lines between maritime and nonmaritime contracts. We have recognized that '[t]he boundaries of admiralty jurisdiction over contracts—as opposed to torts or crimes—being conceptual rather than spatial, have always been difficult to draw.'"  *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 23 (2004)(quoting *Kossick v. United Fruit Co.*, 365 U.S. 731, 735 (1961)).  As such, "[t]here is not a definitive line between maritime and nonmaritime contracts."  *Exxon Mobil Corp. v. Starr Indem. & Liab. Ins. Co.*, 181 F. Supp. 3d 347, 355 (S.D. Tex. 2015).

"The touchstone for determining admiralty jurisdiction pursuant to 28 U.S.C. § 1333 is reference to maritime services in the contract. . ."  *Id.* at 356.  The United States Court of Appeal for the Fifth Circuit applies a two-factor test to determine whether a mixed-services contract is maritime in nature: "To be maritime, a contract (1) must be for services to facilitate activity on navigable waters and (2) must provide, or the parties must expect, that a vessel will play a substantial role in the completion of the contract."  *Barrios v. Centaur, L.L.C.*, 942 F.3d 670, 680 (5th Cir. 2019) (citing *In re Larry Doiron, Inc.*, 879 F.3d 568, 576 (5th Cir. 2018)).

Applying the *Doiron* test in this context presents a challenge because the parties fundamentally disagree about the "nature and subject matter" of the transaction at issue.  That is,

5

the parties dispute *what* the charges on the invoice represent, not merely whether those services were maritime in nature. The dispute turns in large part on the nature of the services captured in the first and largest charge on the invoice: the $472,500.00 charge for "27,000.000 MT U.S. No. 2 Long Grain Rough Rice / $17.50 per." SLRF describes this as a charge for loading the rice onto a ship (M/V Nordic Malmoe), and SLRF attaches to its opposition the affidavit of its manager, Mark Pousson, who attests that "IFG charged SLRF $17.50 per metric ton of rice it loaded onto the MV Nordic Malmoe, totaling $472,500.00 for loading the MV Nordic Malmoe. This is shown by the first line item of the invoice . . ." Doc. 11, att. 2, p. 3. In moving to remand, IFG disputes this characterization of the transaction, asserting that the M/V Nordic Malmoe, the vessel that offloaded a portion of the rice, did so pursuant to a separate contract to which SLRF was not a party. Doc. 6, att. 1, pp. 5–6. IFG asserts that "[a]t no stage in the contracts between SLRF and IFG is any vessel designated by SLRF nor any loading of grain onto any such vessel contemplated in the performance of the contracts." Doc. 6, att. 1, p. 5. IFG describes the $472,500.00 line item on the invoice as a charge for "receiving" the rice. Doc. 12, pp. 3–4. Elsewhere, IFG explains that the first charge arose from the receipt and elevation of hundreds of truckloads of rice over several weeks. Doc. 12, pp. 3–4. IFG states that the only contracts between itself and SLRF are a one-page Terminal Use Application, which makes no mention of a vessel, [doc. 6, att. 3] "and the Tariff as incorporated by the former." Doc. 6, att. 1, p. 11.

Although the parties espouse contrary positions, SLRF marshals considerable documentary evidence that the $472,500.00 charge was for loading the rice onto a vessel, making it more likely than not that the involvement of a vessel was instrumental in the transaction giving rise to this dispute. SLRF explains, by reference to the terms of Elevator Tariff No. 3, that IFG calculated the

6

$472,500.00 charge as a "handling and loading out" charge for 27,000 MT rice. The tariff distinguishes between charges for *incoming* grain and *outgoing* grain:

> "Charges on grain received or unloaded into the warehouse: the gross in weight shall be used in assessing elevation, cleaning, and storage charges. The gross outturn weight of grain shall be the basis for the assessment of handling and loading out charges."

Doc. 15, p. 4 (citing doc. 1, att. 3, p. 8). Referencing documents attached to its responsive pleading and opposition briefing, SLRF shows that the gross weight of incoming rice was 27,414.91 MT [doc. 4, att. 3, p. 1]; that the U.S. Department of Agriculture inspected "27,000.000" metric tons of rough rice that was loaded onto the M/V Nordic Malmoe between April 30 and May 10, 2024 [doc. 4, att. 4, p. 1]; and that the Mate's Receipt for the M/V Nordic Malmoe, dated May 10, 2024, shows that IFG loaded 27,000.000 MT into holds 1, 2, 3, 4, and 5 of that vessel. Doc. 11, att. 3. Noting that the M/V Nordic Malmoe was loaded with 27,000.000 MT of rough rice, and that IFG's petition alleges that "400 MT of rice remains in storage at IFG's facility," SLRF proposes that the first charge on the invoice can only be a "handling and loading out" charge because it was based on the gross weight loaded into the M/V Nordic Malmoe (27,000 MT), not the gross weight received into IFG's facility (approximately 27,400 MT). SLRF also notes that the third line item on the Invoice is "MT Trimming / Holds #1-2-3-4-5 / $4,250 per hold." The reference to "holds" alone suggests the involvement of a vessel, but when viewed alongside the Mate's Receipt for the M/V Nordic Malmoe, which also references holds 1–5, and the reference to the M/V Nordic Malmoe on IFG's invoice, that association becomes clearer.[1] Finally, SLRF attaches to its

---

[1] IFG's Elevator Tariff No. 3 offers further support for the conclusion the third line item on the invoice pertains to vessel loading. Specifically, Section IV of the tariff, entitled "Schedule of Charges," includes subsection K—Trimming that outlines the rates for trimming services consistent with the charges on the invoice and makes clear that such charges are "per vessel hold" and "charged based on the number of holds upon vessel nomination." Doc. 1, att. 3, p.20. In Section VI of the tariff, entitled "Definitions," "trimming" is defined as "[d]istributing cargo in a ship so that the load will not shift and in order that the weight will be properly distributed, or whenever any equipment is attached to the loading spout for mechanical diversion of the grain flow into the vessel holds, or any vessel loading that requires restrictive flow of product on any one of the ship loading spouts." Doc. 1, att. 3, p.24. Continuing,

7

opposition memorandum a demand letter in which IFG's attorneys explicitly refer to Invoice No. 2024-05-001 as "consisting of the *shipment* of 27,000,000 [sic] MT U.S. No. 2 Long Grain Rough Rice and attendant services." Doc. 11, att. 1, p. 1 (emphasis added).

Bearing in mind that all ambiguities must be resolved in favor of remand and that the removing party bears the burden of demonstrating the propriety of removal, this court finds no ambiguity in this matter and that SLRF has clearly demonstrated the transaction underlying the state-court petition was maritime in nature. There is no question that SLRF stored approximately 27,400 metric tons of rice at IFG's port-side facility for a period in 2024; that 27,000 metric tons of rice were loaded onto the M/V Nordic Malmoe on or about May 10, 2024; that the invoice underlying this lawsuit is dated May 10, 2024; that the invoice references (i) 27,000 metric tons of rice, (ii) the M/V Nordic Malmoe, (iii) "trimming" services that, by IFG's definition, are vessel-loading services, and (iv) hold numbers corresponding to those on the vessel's receipt; and that IFG's counsel sent SLRF a demand letter referencing the invoiced charges as related to the shipping of rice. On these facts, to which IFG does not provide a response beyond the argument contained in briefs, the transaction underlying the invoice was "for services to facilitate activity on navigable waters" and SLRF has shown that a vessel played "a substantial role in the completion of the contract." *Barrios*, 942 F.3d at 680 (citing *In re Larry Doiron, Inc.*, 879 F.3d at 576).

Accordingly, it is recommended that the transaction underlying this dispute is maritime in nature and that the court may exercise admiralty jurisdiction under 28 U.S.C. § 1333.

## C. The saving to suitors clause and the tariff's venue selection provision

IFG argues that, even if this is a maritime transaction, the saving to suitors clause would prevent removal jurisdiction. Doc. 6, att. 1, pp. 12–13. Under the "saving to suitors" clause of 28

---

"vessel" for purposes of the tariff refers "only to dry bulk cargo ocean vessels or ocean-going barges of a type customarily engaged in the carriage of grain . . . ." Doc. 1, att. 3, p.25.

U.S.C. § 1333, maritime claims are not generally removable to federal court absent some other basis for federal jurisdiction. "In other words, federal courts generally cannot exercise *removal* jurisdiction over Jones Act cases and/or maritime claims subject to the savings to suitors clause." *Serigny v. Chevron U.S.A., Inc.*, No. CIV.A. 14-0598, 2014 WL 6982213, at *2 (W.D. La. Dec. 9, 2014).

SLRF counters this argument by reference to the forum selection clause in the tariff, characterizing it as a waiver of IFG's right to seek remand. Doc. 11, p. 19. The forum selection clause states that "all disputes" arising from use of the elevator facilities shall be brought in this court, if this court has subject matter jurisdiction:

> Any and all disputes, claims, liability (including absolute and strict liability), causes of action, damages (including punitive damages), or expenses (including legal fees, costs and expenses) directly or indirectly arising out of, related to, and/or resulting from the User's presence or operation at, or adjacent to, or use of, the elevator facilities, which cannot be resolved amicably, shall be subject to the exclusive jurisdiction of the United States District Court for the Western District of Louisiana. If that court lacks subject matter jurisdiction, then exclusive jurisdiction shall rest with the Fourteenth (14th) Judicial Court for the Parish of Calcasieu, State of Louisiana (for disputes involving or related to the IFGPH - LAKE CHARLES elevator facility). Said disputes and/or causes of action shall be resolved under the general maritime law of the United States, in the absence of which Louisiana state law shall apply.

Doc. 1, att. 3, p. 3. The United States Supreme Court has held forum selection clauses in maritime contracts "prima facie valid" and enforceable unless unreasonable:

> The Court has pronounced that forum-selection clauses in maritime contracts are "prima facie valid" under federal maritime law and "should be enforced unless" doing so would be "'unreasonable' under the circumstances." . . . Like choice-of-law provisions, forum-selection clauses respect "ancient concepts of freedom of contract." . . . And like choice-of-law provisions, forum-selection clauses have "the salutary effect of dispelling any confusion" on the manner for resolving future disputes, thereby slashing the "time and expense of pretrial motions."

*Great Lakes Ins. SE v. Raiders Retreat Realty Co., LLC*, 601 U.S. 65, 71–72 (2024) (citations omitted) (citing *The Bremen v. Zapata Off-Shore Co.*, 407 U. S. 1, 10, (1972); *Carnival Cruise*

9

*Lines, Inc. v. Shute*, 499 U.S. 585, 593–594 (1991)). Here, IFG's petition explicitly references its own Elevator Tariff No. 3, which contains a valid forum selection clause. The forum selection clause applies to this litigation because the dispute relates to SLRF's use of IFG's elevator facilities. Such a valid forum selection clause "warrants denial of remand because Plaintiffs have waived their right to object to removal and to seek remand." *Maa v. Carnival Corp. & PLC*, No. CV 20-6341 DSF (SKX), 2020 WL 5633425, at *5 (C.D. Cal. Sept. 21, 2020); *see also* 14A Arthur R. Miller, *Federal Practice and Procedure: Jurisdiction and Related Matters (Wright & Miller)* § 3672 The Saving-to-Suitors Clause, n. 12 (4th ed. 2025) ("The saving-to-suitors clause does not guarantee a nonfederal forum, if the plaintiffs have agreed to a federal forum in a forum-selection clause.")

## D. Federal Question Jurisdiction

In its Notice of Removal, SLRF asserts that a federal court can exercise federal question jurisdiction over this dispute on two bases. SLRF proposes that because "IFG is asserting claims based on its status as a federally licensed warehouse," the United States Warehouse Act, 7 U.S.C. § 241 *et seq.*, both confers jurisdiction and has a preemptive effect. Doc. 1, pp. 4–5; doc. 15, p., 6. SLRF also proposes that insofar as IFG is asserting claims under a Shipping Act tariff, IFG's claim necessarily relies on a provision of the Shipping Act to have effect, 46 U.S.C. § 40501, and thus gives rise to a federal question. Doc. 1, pp. 5–6. In its motion to remand, IFG disputes the existence of federal question jurisdiction, arguing that the connections between this dispute and the Shipping and Warehouse Acts are too attenuated to confer federal question jurisdiction; that the claim does not "arise under" the Warehouse Act such that that act could confer jurisdiction; and that the Shipping Act does not contain any jurisdictional provision that *could* confer jurisdiction. Doc. 6, att. 1, pp. 13–15.

Under 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "The well-pleaded-complaint rule has long governed whether a case 'arises under' federal law for purposes of § 1331." *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 (2002). "Under the well-pleaded complaint rule, 'a federal court has original or removal jurisdiction only if a federal question appears on the face of the plaintiff's well-pleaded complaint; generally, there is no federal jurisdiction if the plaintiff properly pleads only a state law cause of action.'" *Gutierrez v. Flores*, 543 F.3d 248, 251–52 (5th Cir. 2008). The well-pleaded complaint rule "provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. . . The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (internal citation omitted). It is "exceptional" for a state-law claim to invoke federal jurisdiction. 13D Richard D. Freer, *Federal Practice and Procedure (Wright & Miller)* § 3562 The Meaning of "Arising Under" (3d ed. 2025).

"There is one situation, however, in which plaintiff is not master of his claim and in which he states a claim arising under federal law even though his complaint is silent as to federal matters." *Id.* at § 3566 (Determination from the Well-Pleaded Complaint). "On occasion, the Court has concluded that the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar Inc.*, 482 U.S. at 393 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). "Complete preemption" is a "doctrine of subject matter jurisdiction," in contrast to "'ordinary' or 'conflict' preemption, under which federal law provides a defense to a state-law claim." Freer, *supra*, at § 3566. "Once an area of state law has been completely pre-

11

empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar Inc.*, 482 U.S. at 393. Under this doctrine, even if a plaintiff is artful in "hiding the federal question," federal question jurisdiction nonetheless exists where, because state law is completely preempted, "there is, in short, no such thing as a state-law claim." *Bernhard v. Whitney Nat. Bank*, 523 F.3d 546, 551 (5th Cir. 2008). "Very few statutes have a complete preemption effect." Freer, *supra*, at § 3566 (noting that the Supreme Court has identified only four: section 301 of the Taft-Hartley Act, section 502(a) of ERISA, certain tribal claims, and certain sections of the National Bank Act).

1. **The Warehouse Act**

As to federal question jurisdiction stemming from the United States Warehouse Act and its implementing regulations, SLRF argues that "IFG is a federally licensed warehouse" and, as such, it is subject to the exclusive jurisdiction of the federal district courts for any disputes regarding the storage and handling of grain. Doc. 1, p. 4 (citing 7 U.S.C. §§ 242, 255 and 7 C.F.R. 869.9(b)). SLRF also argues that IFG is attempting to state a claim that is preempted by the Warehouse Act. These arguments are addressed in turn.

> a. **Federal question jurisdiction does not automatically attach because the claim was brought by a federally licensed warehouse.**

The United States Warehouse Act, 7 U.S.C. § 241 *et seq.*, was reenacted in 2000 for the stated purpose of requiring "the licensing and inspection of warehouses used to store agricultural products and provide for the issuance of receipts, including electronic receipts, for agricultural products stored or handled in licensed warehouses . . ." Grain Standards and Warehouse Improvement Act of 2000, PL 106–472, November 9, 2000, 114 Stat 2058. As amended, it provides that "[a] district court of the United States shall have exclusive jurisdiction over any

12

action brought under this chapter without regard to the amount in controversy or the citizenship of the parties." 7 U.S.C. § 255.

The court finds no support for SLRF's proposition that the federal courts have "exclusive jurisdiction over any disputes regarding the storage and handling of grain by a federally licensed warehouse." Doc. 1, p. 4. The statutes SLRF cites—7 U.S.C. §§ 242, 255 and 7 C.F.R. § 869.9(b)—do not fully support the proposition. Under 7 U.S.C. § 242, the Secretary of Agriculture enjoys "exclusive power, jurisdiction, and authority" over federally licensed warehouses, but this provision refers to regulatory authority and jurisdiction, not judicial authority. *See Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 232 (1947). The jurisdiction-conferring provision at 7 U.S.C. § 255 states that "[a] district court of the United States shall have exclusive jurisdiction over any action brought under this chapter without regard to the amount in controversy or the citizenship of the parties," but that provision leaves open the question of what it means for a claim to be "brought under" the Warehouse Act. Finally, 7 C.F.R. § 869.9 allows a person to "initiate legal action in any court of competent jurisdiction concerning a claim for noncompliance or an unresolved dispute with respect to activities authorized under the Act[,]" which merely confirms the existence of a cause and right of action, but does not mandate the jurisdiction of adjudication.

Although the district courts have exclusive jurisdiction over actions "brought under" the Warehouse Act, there is a dearth of jurisprudence explaining when a *state law* cause of action could be considered to be "brought under" the Warehouse Act. SLRF has made no showing that IFG's claims are "brought under" the Warehouse Act. In the absence of such a showing, the federal courts do not have exclusive jurisdiction over this dispute under 7 U.S.C. § 255.

13

### b. The Warehouse Act does not enjoy super-preemptive effect.

SLRF further notes that IFG's petition invokes Louisiana's state law provisions concerning warehouse receipts by demanding removal of stored goods under La. R.S. § 10:7-206. SLRF reasons that because Louisiana's warehouse laws and regulations are preempted by federal warehouse laws on the same subject, IFG is "a federally licensed warehouse asserting a *preempted* state law cause of action," and that the petition therefore asserts a cause of action under the United States Warehouse Act, 7 U.S.C. § 241 *et seq.* Doc. 15, p. 6 (emphasis original). In other words, SLRF argues that IFG's invocation of state warehouse law gives rise to a federal question because of the preemptive effect of the United States Warehouse Act.

If there is jurisprudence stating that a federally-licensed warehouse may not bring a cause of action under La. R.S. § 10:7-206 because that statute is preempted by federal law, SLRF does not cite to it. The court is also unaware of any case finding that any section of the Warehouse Act has a complete preemption effect. Although a court could conceivably find that the provision of Louisiana law under which IFG demands removal of stored grain, La. R.S. § 10:7-206, is preempted by arguably analogous provisions of the United States Warehouse Act, there is no support for the proposition that this court can exercise federal question jurisdiction over this entire dispute by virtue of that preemptive effect. In other words, SLRF's "demonstration that the defense of preemption applies does not create a basis for subject matter jurisdiction in the same manner as does 'super-preemption'" by statutes such as ERISA. *Bruneau v. F.D.I.C.*, 981 F.2d 175, 180 (5th Cir. 1992).

### 2. IFG's claims do not rely on the Shipping Act.

Finally, SLRF argues that this court may exercise federal question jurisdiction over this matter because IFG is attempting to enforce a Shipping Act tariff and implicitly relying on a

14

provision of the Shipping Act in doing so. Doc. 1, pp. 5–6. The court perceives no explicit or implicit reference to or reliance on the Shipping Act in the petition, and the court finds no federal question in IFG's reference to Elevator Tariff No. 3.

In its petition, IFG invokes its Elevator Tariff No. 3 as a basis to seek litigation expenses, using this language:

> The elevator and terminal services provided by IFG to SLRF are subject to IFG's Elevator Tariff No. 3 ("Tariff") which provides that in the event of legal proceedings, IFG shall be entitled to recover its expenses incurred in such proceeding, including reasonable attorney's fees and costs.

Doc. 1, att. 2, p. 6. In its notice of removal, SLRF characterizes the Tariff as a Shipping Act tariff. Doc. 1, pp. 5–6 (citing 46 U.S.C. § 40501). SLRF argues that the Shipping Act gives marine terminal operators a federal right and cause of action to enforce Shipping Act tariffs and that when an action seeks to recover fees and charges under a Shipping Act tariff, jurisdiction attaches under 28 U.S.C. §§ 1331 and 1337. Doc. 1, pp. 5–6 (citing 46 U.S.C. § 40501). SLRF explains that 46 U.S.C. § 40501 allows such a tariff to be enforced as an "implied contract" if published to the public. SLRF argues that IFG's attempt to enforce the tariff's terms implicitly relies on 46 U.S.C. § 40501, and as such, it states a federal question—or at least incorporates this federal statue as an element of the cause of action—and therefore gives rise to federal question jurisdiction under 28 U.S.C. § 1331. Doc. 11, pp. 24–25.[2]

---

[2] SLRF also argues that IFG's implied invocation of 46 U.S.C. § 40501 creates jurisdiction under 28 U.S.C. § 1337(a), which provides this court with original jurisdiction for "any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies." Doc. 11, pp. 25–29 (citing 28 U.S.C. § 1337). This opinion does not further address this argument because 28 U.S.C. § 1337 provides no additional grant of jurisdiction beyond that provided in 28 U.S.C. § 1331. *Willy v. Coastal Corp.*, 855 F.2d 1160, 1165 n. 6 (5th Cir. 1988) (citing *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 8 n. 7 (1983)).

IFG does not need to enforce the tariff as an "implied contract." IFG attaches to its motion a Terminal Use Application that purports to have been completed on behalf of SLRF and signed by its principal; the document includes language whereby SLRF "agrees to be bound by all rules, regulations, terms, conditions and charges as published in the IFG export grain terminal tariff(s)." Doc. 6, att. 3. Without attempting to resolve whether this Terminal Use Application is authentic, relevant, or enforceable as to the merits of this case, the Court finds that IFG relies on the contractual language in the Terminal Use Application—rather than the statutory language in 46 U.S.C. § 40501—in its attempt to enforce Elevator Tariff No. 3 against SLRF.

Accordingly, IFG's tariff-related claim does not appear to require interpretation of the Shipping Act or other federal law to have effect. A dispute relating to a Shipping Act tariff has given rise to federal question jurisdiction when resolving the dispute would require the court to interpret laws of the United States. *See Orleans Materials & Equip. Co. v. Isthmian Lines, Inc.*, 218 F. Supp. 322, 324 (E.D. La. 1963) (withdrawing remand order after reconsideration). But the court perceives no basis to find that IFG has created a federal question by attempting to enforce the terms of a tariff by which SLRF may have agreed to be bound.

### III.
#### CONCLUSION

For the reasons stated, **IT IS RECOMMENDED** that this court may exercise admiralty jurisdiction over this matter under 28 U.S.C. § 1333 and that the Motion to Remand [Doc. 6] should be **DENIED**.

Under the provisions of 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure, parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Failure to file written objections

to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglas v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

      **THUS DONE AND SIGNED** in Chambers this 26th day of September, 2025.

_____
**THOMAS P. LEBLANC**
**UNITED STATES MAGISTRATE JUDGE**