**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

---

IFG PORT HOLDINGS, LLC

VERSUS

SOUTH LOUISIANA RAIL
FACILITY, LLC

CIVIL ACTION NO. 24-1095

JUDGE ALEXANDER C. VAN HOOK

MAGISTRATE JUDGE LEBLANC

---

## MEMORANDUM RULING

Pending before the Court is a Motion for Judgment on the Pleadings ("Motion") filed by plaintiff IFG Port Holdings, LLC ("IFG"). Record Document 26. Defendant South Louisiana Rail Facility, LLC ("SLRF") filed a Memorandum in Opposition and IFG filed a Reply. *See* Record Documents 28 and 29). For the reasons assigned herein, IFG's Motion is **GRANTED IN PART** and **DENIED IN PART**.

## FACTUAL BACKGROUND

This litigation boils down to a battle about rice storage. Plaintiff and counter-defendant IFG is a marine terminal operator that manages, controls, and operates a facility located at Port of Lake Charles in Calcasieu Parish, Louisiana, wherein IFG provides storage and vessel loading services for commodities to be loaded onto ocean-going vessels. Record Document 4 at 7. Defendant and counter-plaintiff SLRF has maintained an open account with IFG for many years for the provision of elevator and terminal services. Record Documents 1-2 at 5; 26-2 at 6; 28 at 7.

On October 12, 2023, SLRF executed two separate contracts, each entitled a Terminal Use Application ("TUA"), wherein SLRF stated that it would transport

approximately 23,120 metric tons and 25,000 metric tons, respectively, of U.S. No.2 rough rice by truck to IFG's facility for storage. Record Document 26-3 at 2-3.  On November 15, 2023, SLRF executed a third TUA wherein it stated it would be delivering an additional 20,000 metric tons of rough rice to the IFG facility for storage, Record Document 26-3 at 4, and on April 19, 2024, a fourth TUA was executed stating $30,000 \pm 10\%$ metric tons of rough rice would be delivered to the IFG facility for storage. Record Document 26-3 at 1. None of the TUAs listed how long the rice would be stored or onto what vessel it was ultimately to be loaded. Record Document 26-3 at 1-4.  All of the TUAs stated at the bottom in all capital letters:

> THE UNDERSIGNED COMPANY, AGENTS FOR THE ABOVE-NAMED VESSEL OR BARGE, IN CONSIDERATION FOR APPROVAL OF THE APPLICATION, AGREES TO BE BOUND BY ALL RULES, REGULATIONS, TERMS, CONDITIONS AND CHARGES AS PUBLISHED IN THE IFG EXPORT GRAIN TEMRINAL [sic] TARIFF(S), INCLUDING ACCEPTANCE OF FINANCIAL RESPONSIBILITY THEREFOR.

*Id*.

The parties disagree on the exact amount of rice SLRF trucked to the IFG facility, with IFG stating: "In or around December 9, 2023, SLRF delivered approximately 27,000 metric tons of rough rice … into IFG's silos[.]". Record Document 26-2 at 6. SLRF states: "[B]etween September 25, 2023, and October 9, 2023, SLRF delivered approximately 23,159.82 metric tons of rough rice to the Facility to be stored and loaded onto an ocean-going vessel by IFG.… [B]etween November 9, 2023, and April 30, 2024, SLRF delivered approximately 27,414.91 metric tons of rough rice to the Facility to be stored and loaded onto an ocean-going vessel by IFG." Record Documents 4 at 7-8; 4-1, 4-2, 4-3, and 4-4.

Ultimately, some of SLRF's rice was loaded onto the M/V Ruddy, and some onto the M/V Nordic Malmoe, with approximately 400 metric tons left stored in the IFG storage silos. Record Documents 26-2 at 6; 28 at 7. The facts and circumstances around why all of the rice was not loaded onto the two motor vessels is disputed by the parties, resulting in this lawsuit.

SLRF maintains that it directed IFG to load 23,136.24 metric tons of rice stored at IFG's facility in late 2023 onto the M/V Ruddy; however, when the vessel arrived at its destination the amount of rice on board was approximately 500 metric tons short. Record Document 4 at 7.[1] SLRF also maintains that it directed IFG to load all of the additional 27,414.91 metric tons of rice stored at IFG's facility in early 2024 on board the M/V Nordic Malmoe; however, only 27,000 metric tons were actually loaded and IFG improperly retained the remaining 414.91 metric tons at its facility, charging SLRF ongoing storage fees and ultimately penalties for that improper retainage. *Id.*, at 7-10. According to SLRF, both of those actions resulted in lost profits and improper storage fees being charged. *Id.*, at 10; Record Document 28 at 18, 20.[2]

IFG maintains that it properly loaded the M/V Ruddy, and under Tariff No. 3 it is not responsible for any shortage that may have been found later, long after the rice was out of IFG's control.[3] Record Document 26-2 at 11-12. IFG also maintains

---

[1] Nothing in the record explains the discrepancy between the 23,159.82 metric tons of rough rice described in SLRF's Answer as being delivered to IFG for storage, and the 23,136.24 metric tons of rice SLRF ordered to be loaded on the M/V Ruddy.

[2] IFG sold the rice remaining in its facility to a third party and credited SLRF's outstanding balance with the proceeds of that sale. Record Documents 4 at 10 and 26-2 at 7. SLRF alleges that IFG converted that retained rice for its own purposes and the credit does not matter since SLRF does not owe any additional amounts. Record Document 28 at 20.

[3] Elevator Tariff No. 3 is a document produced by IFG containing rules and regulations and other terms related to storage at their elevator facilities in Lake Charles. *See* Record Document 26-4.

that it loaded the M/V Nordic Malmoe according to the vessel manifest and the directions of the vessel's captain, and that SLRF's request to load all of the rice conflicted with the captain's directions. Record Documents 8 at 3; 29 at 8, 10 n.4.  It then states that it notified SLRF of the remaining rice and requested that SLRF promptly remove that rice. Record Document 26-2 at 6-7.

Ultimately, IFG sued SLRF in Louisiana state court over the allegedly unpaid storage fees and other costs. Record Document 1-2.  In its Answer, SLRF asserted two counterclaims against IFG, alleging violations of the federal Grain Storage Act (7 U.S.C. § 71 *et seq.*), Warehouse Act (7 U.S.C. § 241 *et seq.*), and Shipping Act (46 U.S.C. § 40101 *et seq.*), along with state law claims of breach of contract and conversion. Record Document 4 at 7-11. SLRF removed the case to federal district court, Record Document 1, and the magistrate judge found that the case was in admiralty and should be litigated in federal court. Record Document 17.  IFG now moves for judgment on the pleadings, alleging that none of the federal statutes cited in SLRF's counterclaims provides for a private right of civil action, and the waiver language in Tariff No. 3 precludes all of SLRF's claims. Record Document 26.

## LAW AND ANALYSIS

### A.    Legal Standard.

"After the pleadings are closed - but early enough not to delay trial - a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). A Rule 12(c) motion is designed to dispose of cases where the facts are not in material dispute and a

judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noted facts. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 734 (5th Cir. 2019)(citing *Linicomn v. Hill*, 902 F.3d 529, 533 (5th Cir. 2018)). In ruling on such a motion, the Court construes the plaintiff's pleadings liberally, accepting all well-pleaded facts as true when viewed in the light most favorable to the plaintiff, and may only grant the motion where the plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Doe v. MySpace*, 528 F.3d 413, 418 (5th Cir. 2008)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court may not, however, "accept as true conclusory allegations or unwarranted deductions of fact." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 (5th Cir. 2002). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim.  Thus, the court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* A motion for judgment on the pleadings is subject to the same standard as a motion to dismiss for failure to state a claim under Federal Ruler of Civil Procedure 12(b)(6). *Walker*, 938 F.3d at 734.

**B.    Analysis.**

In this case, SLRF has made counterclaims against IFG and it is the counterclaims that are the subject of the Motion. Therefore, the Court looks to SLRF's original Answer and all attachments thereto, which sets forth SLRF's counterclaims, as the relevant pleading.  As noted above, in addition to claims for breach of contract

5

and conversion, SLRF has alleged that IFG violated Section 87(b) of the Grain Storage Act (7 U.S.C. § 71 *et seq.*), Section 251 of the Warehouse Act (7 U.S.C. § 241 *et seq.*), and Section 41102(c) of the Shipping Act (46 U.S.C. § 40101 *et seq.*). In its Answer and its Opposition, SLRF asserts that each federal statute contains a private right of action for a plaintiff to pursue a direct remedy against a violator. In its Motion and Reply, IFG asserts just as forcefully that SLRF has no private right of action under any of the three federal statutes.  The Court looks at each statute in turn.

### 1.  Private Right of Action and Remedy.

In determining whether a statute provides for a private right of action and remedy, courts must examine the statutory language and whether Congress, in passing the statute, intended for such a right and remedy to apply. *Thompson v. Thompson*, 484 U.S. 174, 179 (1988); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979).  "The ultimate question is one of congressional intent, not one of whether this Court thinks that it can improve upon the statutory scheme that Congress enacted into law." *Touche Ross*, 442 U.S. at 578.  *See also, Thompson*, 484 U.S. at 179 ("[U]nless this congressional intent can be inferred from the language of the statute, or some other source, the essential predicate for implication of a private remedy simply does not exist."). "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Alexander v. Sandoval*, 532 U.S. 275, 286, 289 (2001)(citing *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 15 (1979)). Importantly, "[without congressional intent], a cause of action does not exist, and

courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* at 286-87 (modification added).

### a. Grain Storage Act.

SLRF cites to no provision in the Grain Storage Act that directly or inferentially provides a private right of action for a depositor, and a review of the statute discloses no civil enforcement provision that creates a private right of action or remedy for a violation of the act. Section 87c of the Grain Storage Act provides for criminal penalties, which may be enforced at the discretion of the Secretary of Agriculture. *See* 7 U.S.C. § 87c. This Court can find no language or authority asserting or permitting a private right of action under the Grain Storage Act, and SLRF's claim cannot succeed under any set of facts it might present at trial. Accordingly, SLRF's counterclaim under the Grain Storage Act is **DISMISSED WITH PREJUDICE**. *Accord Commercializadora Portimex S.A. de CV v. Thionville Laboratories, Inc.*, 2004 WL 1336407, at *6 (E.D. La.2004)(finding no private right of action under the Grain Storage Act).

### b. Warehouse Act.

Whether the Warehouse Act provides a private right of action is more nuanced. On one hand, Section 255 of the Warehouse Act states "[a] district court of the United States shall have exclusive jurisdiction over any action brought under this chapter without regard to the amount in controversy or the citizenship of the parties." 7 U.S.C. § 255(a). And the implementing regulations state "[a] person may initiate legal action in any court of competent jurisdiction concerning a claim for noncompliance or

7

an unresolved dispute with respect to activities authorized under the Act." 7 C.F.R. § 869.9. Indeed, in this case the magistrate judge, in *dictum* in his report and recommendation, cites that implementing regulation when noting that the regulation "merely confirms the existence of a cause and right of action, but does not mandate the jurisdiction of adjudication." Record Document 17 at 13. One district court in this Circuit, basing its finding on the implementing regulation cited above, found that the Warehouse Act does provide a private right of action. *See Allenberg Cotton Co. v. Staple Cotton Coop. Ass'n.*, 2009 WL 1619950, at *5 (N.D. Miss 2009).[4]  To date, the Fifth Circuit has not weighed in on the matter.

What is missing, however, is any language in the statute itself conferring upon an aggrieved party a private right of action and remedy for a violation of Section 251 of the Warehouse Act. It is beyond peradventure that an implementing regulation cannot confer rights that are not otherwise set forth in the actual statute. *See, e.g., Sandoval*, 532 U.S. at 291 ("Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not."); *Touche Ross*, 442 U.S. at 577 n.18 ("[T]he language of the statute and not the rules must control")(collecting cases). Thus, unless the Warehouse Act itself confers upon SLRF a private right of action for a violation of Section 251, the implementing regulation is without moment as to that provision.

---

[4] In another Warehouse Act case, the Court found the Warehouse Act completely preempted state law. *Staple Cotton Coop. Ass'n.  and Beltwide Cotton Coop. v. D.G. & G., Inc.*, 631 F. Supp. 2d 1168 (E.D. Mo. 2007).

Section 245 of the Warehouse Act requires a licensee to obtain a performance bond or other acceptable financial assurance of performance, and provides that "[a]ny person injured by the breach of any obligation arising under this chapter for which a bond or other financial assurance has been obtained as required by this section may sue with respect to the bond or other financial assurance in a district court of the United States to recover the damages that the person sustained as a result of the breach." 7 U.S.C. § 245(d). This provision is important in two respects. First, it provides an express remedy for an aggrieved party; namely, to sue the surety on the bond or other financial assurance, which suit must be filed in a federal district court as stated in both Section 245(d) and Section 255(a).[5] Second, it clearly shows that Congress contemplated remedies when drafting the statutory language of the Warehouse Act and elected not to include a direct private right of action against the warehouse operator under Section 251. *See, e.g., Karahalios v. Nat'l Fed'n of Fed. Employees*, 489 U.S. 527, 532 (1989)("In the absence of strong indicia of contrary

---

[5] One authoritative but non-binding source has observed that the aggrieved party may also have recourse against the United States:

> A surety may be limited to recovering on its bond against the warehouse operator and other parties obligated thereunder, even though grain depositors and sellers may additionally have a claim against the United States for negligence in failing to discover a warehouse operator's breach of obligations under the United States Warehouse Act. As explained in *Appley Bros. v. U.S.*, 924 F. Supp. 944 (D.S.D 1996), *aff'd on other grounds*, 164 F.3d 1164 (8th Cir. 1999), a primary purpose of the United States Warehouse Act is to benefit sellers and depositors of grain by requiring warehouse compliance inspections, so that these parties could state a claim against the Department of Agriculture based on a breach of a common-law duty to use due care in making those inspections, but that it is not a primary purpose of the Warehouse Act to protect sureties of warehousemen, leaving the grain elevator's surety no similar claim against the Department of Agriculture.

CONSTRUCTION AND APPLICATION OF UNITED STATES WAREHOUSE ACT, 7 U.S.C.§§ 241-256, AND ITS IMPLEMENTING REGULATIONS, 39 ALR Fed. 2d 417, at §7 (originally published in 2009).

congressional intent, we are compelled to conclude that Congress provided precisely the remedies it considered appropriate."); *MM&S Financial, Inc. v. Nat'l Ass'n. of Sec. Dealers, Inc.*, 364 F.3d 908, 911 (8th Cir. 2004)(noting that Congress knows how to create a private right of action when it wants to, and the failure to use such specific language for another section suggests that Congress had no such intent as to that section). Neither the implementing regulations nor this Court can create a right that Congress elected not to create. *Sandoval*, 532 U.S. at 291.

The findings of two other courts addressing whether a depositor has a private right of action and remedy under the Warehouse Act are instructive. In *Pacific Trading Company v. Wilson and Company, Inc.*, 547 F.2d 367 (7th Cir. 1976), the Seventh Circuit agreed with the lower court that the provisions of the Warehouse Act are penal, with enforcement authorized only in the Secretary of Agriculture under 7 U.S.C. § 270. *Id.* at 370. A depositor may seek reimbursement from the Secretary from any fees or fines imposed by the Secretary but may not directly sue the warehouse operator under the Act. *Id.*[6]

In *Syngenta Seeds, Inc. v. Bunge North America, Inc.*, 820 F. Supp. 2d 953 (N.D. Iowa 2011), the court noted the opposing findings in *Pacific Trading* and *Allenberg Cotton Company* and looked deeper into congressional intent to determine which court was more persuasive. Following reasoning very similar to that of this Court, it determined that the implementing regulations could not create a private right of action for a violation of Section 247 absent language conferring that right in the

---

[6] The Warehouse Act was extensively revised in 2000 and Section 270 was eliminated. *See* Pub. L. 106-472, Title II, §201, Nov. 9, 2000, 114 Stat. 2061.

statute itself. *Id.* at 977 (quoting *Freeman v. Fahey*, 374 F.3d 663, 665 n.2 (8th Cir. 2004)). "Here, the pre-existing right of action is defined in § 245(d), so that § 255 relates to jurisdiction over that right of action, not over a private right of action under § 247, which lacks any language creating such a right." *Id.* at 978. As noted above, this Court agrees that the same rationale exists for violations alleged under Section 251, which similarly lacks any private right of action language.

For those reasons, SLRF cannot present any facts or evidence that would entitle it to succeed on a private right of action against IFG under the Warehouse Act, and that claim is **DISMISSED WITH PREJUDICE**.

### c.  Shipping Act.

The third federal statute SLRF seeks to invoke is Section 41102(c) of the Shipping Act. Record Document 4 at 11. In its Motion, IFG flatly states "The Shipping Act does not provide for a private right of action." Record Document 26-2 at 14. In its Opposition, SLRF cites numerous cases going back to 1932 finding that, in fact, there is a private right of action under the Shipping Act. *See, e.g., Mediterranean Shipping Co. (USA) Inc. v. Huatai USA LLC*, 2020 WL 953531, at *1 (S.D.N.Y. 2020); *Maersk Line v. TJM Int'l Ltd. Liab. Co.*, 427 F. Supp. 3d 528, 533 (D.N.J 2019); *De Well Container Shipping, Inc. et al. v. Studio Imports, Inc.* 2014 WL 13130377, at *2 (C.D. Cal. 2014); *Hong Kong Islands Line America S.A. v. Dist. Serv's Ltd.*, 795 F. Supp. 983, 990 (C.D. Cal. 1991); *Sea-Land Serv., Inc. v. Murrey & Son's Co. Inc.*, 824 F.2d 740, 744 (9th Cir. 1987); and *Prince Line, Ltd. v. American Paper Exports, Inc.*, 55 F.2d 1053, 1056 (2d Cir. 1932)). As the law is not clear, a closer look is in order.

11

Starting back in 1932, no less than the esteemed Judge Learned Hand examined this issue and compared the Shipping Act to the Interstate Commerce Act ("ICA"), which courts had ruled had a private right of action for someone aggrieved under the ICA. *Prince Line, Ltd.*, 55 F.2d at 1055. Finding the two acts conceptually similar, Judge Hand ruled that a carrier is legally obligated to enforce tariff rates and has the right to sue a shipper if necessary to do so. *Id.* at 1056. The Ninth Circuit, in *Sea-Land Service, Inc.,* mirrored Judge Hand's logic and the parallels between the ICA and the Shipping Act, finding "an implied private cause of action under the Shipping Act allows carriers to sue shippers to collect fees owed pursuant to the published tariffs." 824 F.2d at 744. Each case cited by SLRF agrees: "HKIL has a private right of action under the Shipping Act of 1984 to collect liquidated damages for breach of service contract." *Hong Kong Islands Line America S.A.*, 795 F. Supp. at 990; "With respect to their first claim, Plaintiffs have stated a claim for relief under 46 U.S.C. § 41104 upon which they may recover." *De Well Container Shipping, Inc.*, 2014 WL 13130377, at *2; "The Shipping Act contains an implied private cause of action to collect fees owed pursuant to published tariffs." *Maersk Line*, 427 F. Supp. 3d at 533; and finally "The Second Circuit has held that there is a private cause of action under this statute." *Mediterranean Shipping Co. (USA) Inc.*, 2020 WL 953531, at *1 (citing Judge Hand in *Prince Line, Ltd.*).  Even the Fifth Circuit appears to agree that a carrier has a private right of action under the Shipping Act, though it did not explicitly say so. In *Gilbert Imported Hardwoods v. 245 Packages of Guatambu Squares, More or Less*, 508 F.2d 1116, 1120 (5th Cir. 1975), the Fifth Circuit found

12

that a tariff approved by the Federal Maritime Commission has the force of law, and a carrier can sue a shipper to enforce the tariff.

So, notwithstanding IFG's contention in its Motion, it is clear that there is a private right of action under the Shipping Act for a carrier to sue a shipper to enforce a tariff rate. Were those the facts of this case our inquiry would be done, but they are not. Here, SLRF, a shipper, is suing IFG, a carrier, to enforce a provision of the Shipping Act. As this appears to be a case of first impression in the Fifth Circuit, the inquiry must continue to see if the inferred private right of action encompasses that set of facts.

In *Government of Guam v. American President Lines, Limited*, 809 F. Supp. 150 (D.D.C. 1993), the district court closely examined the statutory language of the Shipping Act and determined "[f]rom all indications it appears that Congress did not intend to grant shippers a right of action in the district court." *Id.* at 155. The D.C. Circuit affirmed the district court's rationale and findings. *Gov't of Guam v. American President Lines,* 28 F.3d 142 (D.C. Cir. 1994)("*Gov't of Guam 2*"). In *United States v. Peninsular and Occidental Steamship Company*, 208 F. Supp. 957 (S.D.N.Y. 1962), which was a criminal case brought by the United States against a shipper, the court cited legislative history from the 1936 amendments to the Shipping Act noting "Congress was concerned with affording protection to the innocent carrier who is deceived by a shipper through the use of devices prohibited by the section." *Id.* at 958-59 (quoting H.R. Rep. No. 2205, 74th Cong., 2d Sess. 1 (1936)).

13

IFG cites three relatively recent cases in other jurisdictions which also held a shipper has no private right of action against a carrier under the Shipping Act: *Mediterranean Shipping Co. USA Inc. v. AA Cargo Inc.*, 46 F. Supp. 3d 294, 301 (S.D.N.Y. 2014)("However, the Shipping Act does not provide for a private right of action in federal district court; rather, alleged violations of the Shipping Act must be addressed with the Federal Maritime Commission")(citing *Gov't of Guam 2,* 28 F.3d at 144) ); *MAVL Capital, Inc. v. Marine Transport Logistics, Inc.* 130 F. Supp. 3d 726, 731-32 (E.D.N.Y. 2015)("Although the Shipping Act contemplates that district courts will play a limited role in the adjudication of violations of the Act, by enforcing the [Federal Maritime Commission's] orders, Plaintiffs cannot avail themselves of any remedy in federal court unless they first lodge a complaint with the FMC.")(collecting cases); and *Maersk Line A/S v. Carew*, 588 F. Supp. 3d 493, 507 (S.D.N.Y. 2022)(quoting *Mediterranean Shipping Co. USA Inc.* and *MAVL Capital, Inc.* for the same conclusion).

From these cases it would seem Congress intended the Shipping Act to protect maritime carriers, while a shipper's recourse lay in filing claims with the Federal Maritime Commission. SLRF cites to no case, and this Court could find no case or other authority, that held there is an inferred private right for a shipper to sue a carrier under the Shipping Act. Accordingly, this Court finds the holdings of the courts cited above persuasive and holds that SLRF has no private right to sue IGL for a violation of Section 41102(c) of the Shipping Act, and SLRF's federal claim under the Shipping Act is **DISMISSED WITH PREJUDICE**.

14

## 2. Remaining Claims for Breach of Contract and Conversion.

As noted above, in ruling on a Rule 12(c) motion the court looks to the substance of the pleadings and any judicially noted facts, *e.g.*, "public records and government websites." *Billy Navarre Certified Used Car Imports LLC v. Claremont Property Co.*, 2025 WL 2463812, at *3 (W.D. La. 2025)(quoting *Durr v. GOL, LLC*, 393 F. Supp. 3d 476, 483 (E.D. La. 2019)). With one important exception, the court may not go outside the plaintiff's pleadings and any attachments thereto. *Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). That one, narrow exception arises when the defendant attaches documents to its motion that were not attached to the plaintiff's pleadings but were referenced in the plaintiff's pleadings and are central to the plaintiff's claims. *Collins v. Morgan Stanley*, 224 F.3d 496, 498-99 (5th Cir. 2000)("In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated."); *see also Truong v. Magnolia Fleet, LLC*, 724 F. Supp. 3d 568, 573-74 (E.D. La. 2024)(describing the *Collins* exception). If a court determines that a plaintiff's pleading has directly or inferentially referenced the documents attached to the defendant's pleading, the key analysis then becomes whether such defendant-proffered documents are, in fact, central to the plaintiff's claims. *Scanlan*, 343 F.3d at 537 ("[T]he Commission Report, while insightful, is not central to the Plaintiff's claims"). Of importance, a document attached to the defendant's motion that is only central to the defendant's defense is not central to the plaintiff's claim. *Truong*, 724 F. Supp. 3d at 574 ("What is clear is that the centrality

15

requirement is not met when an exhibit is central only to the defendant's defense, and not the plaintiff's claim.")(quoting *Scanlan*, 343 F.3d at 536).

In its Motion, IFG states that the waiver language in its Tariff No. 3 precludes all of SLRF's counterclaims, and accordingly those claims must be dismissed with prejudice. Record Document 26-2 at 12. SLRF avers that Tariff No. 3 was not attached to its Answer, this Court may not consider the tariff or its waiver language in ruling on IFG's Motion, and the Tariff is not central to its counterclaims in any event, it is only central to IFG's affirmative defense to those claims. Record Document 28 at 10-12. IFG invokes the *Collins* exception and counters that Tariff No. 3 is expressly referenced in an exhibit to SLRF's Answer, an invoice that notes: "All other terms, conditions, fees and charges in accordance with IFG Export Grain Terminal Tariff No. 3." Record Documents 4-5 at 1; 26-2 at 11. IFG also asserts that Tariff No. 3 is central to SLRF's counterclaims because it is the TUA and Tariff No. 3 that dictate the terms, conditions and responsibilities undertaken between the parties, which SLRF alleges IFG has violated. Record Document 26-2 at 10-11. The Court agrees.

SLRF does not specifically state what "contract" it alleges IFG breached, but the only agreements in the record between the two parties, albeit not signed by IFG, are the TUAs, and SLRF references the TUAs in its Answer. Record Document 4 at 9 ("On or about April 19, 2024, SLRF submitted a Terminal Use Application to IFG and directed IFG to load all the rice that was in storage at the Facility onto the M/V Nordic Malmoe"); and at 11 ("IFG is liable for breach of contract and conversion for misrepresenting the amount of rice loaded onto the M/V Ruddy and improperly

retaining the rice it was directed to load onto the M/V Nordic Malmoe."). As noted above in the factual background, each TUA expressly incorporates Tariff No. 3, which under Louisiana law then becomes part of the contract. *One Beacon Ins. Co. v. Crowley Marine Serv's*, 648 F.3d 258, 267 (5th Cir. 2011)("Under general contract principles, where a contract expressly refers to and incorporates another instrument in specific terms which show a clear intent to incorporate that instrument into the contract, both instruments are to be construed together.")(citing WINSTON ON CONTRACTS § 30:25, 4th ed. 1999); *Russellville Steel Co., Inc. v. A&R Excavating, Inc.*, 624 So. 2d 11, 12 (La. App. 5th Cir. 1993), ("As a general rule of contract law, separate documents may be incorporated into a contract by attachment or reference thereto.")(citing *Action Finance Corp. v. Nichols*, 180 So. 2d 81 (La. App. 2d Cir. 1965)).

Finding that Tariff No. 3 is a part of the contract that SLRF accuses IFG of breaching, and is central to its breach of contract and conversion claims, the issue then becomes whether the claim waiver language in Tariff No. 3 precludes SLRF's state law claims. At this early stage of the litigation, it is impossible to have clarity on the exact nature of the evidence that may be presented following discovery. As noted at the beginning of this ruling, "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Great Plains Trust v. Morgan Stanley*, 313

17

F.3d 305, 313 (5th Cir. 2002). As both parties note, the waiver language in Tariff No. 3 is inapplicable to gross negligence or willful misconduct. Record Documents 28 at 12-14; 29 at 5-6. IFG asserts in its Reply that SLRF does not assert claims for gross negligence in its counterclaims, so the Court should rule all of SLRF's counterclaims precluded by the Tariff No. 3 waiver language, Record Document 29 at 5-6; however, SLRF states in its first counterclaim "IFG's actions and omissions in falsely representing the amount of rice….", and its second counterclaim "IFG is liable to SLRF for breach of contract and conversion for misrepresenting the amount of rice loaded onto the M/V Ruddy and improperly retaining the rice it was directed to load unto the M/V Nordic Malmoe," clearly allege willful misconduct. Record Document 4 at 8, 11. At this point the Court cannot find as a matter of law that SLRF, following discovery, cannot present any set of facts that would support a claim of willful misconduct, so it cannot agree that Tariff No. 3 precludes SLRF's claims. IFG is free to move for summary judgment based on the tariff's waiver language, or on any other basis, following discovery, but this Court will not preclude SLRF from having the opportunity to establish its case through discovery. Accordingly, IFG's Motion as to SLRF's state law counterclaims is **DENIED**.

**CONCLUSION**

For the foregoing reasons, **IT IS ORDERED** that IFG's motion for judgment on the pleadings (Record Document 26) is **GRANTED IN PART** and **DENIED IN PART**. SLRF's federal claims filed against IFG in this matter under the Grain

18

Storage Act, the Warehouse Act, and the Shipping Act are **DISMISSED WITH PREJUDICE**. Otherwise, IFG's Motion is **DENIED**.

    **DONE AND SIGNED** at Shreveport, Louisiana, this 21st day of July, 2026.


                                            ALEXANDER C. VAN HOOK
                                 UNITED STATES DISTRICT JUDGE